UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MARIE PETERSEN, individually and as
alleged sole managing member of 519 Throop
Ave., LLC

                                            06-Civ-6663 (RJD)(SMG)

               Plaintiff,

      v.

ARIES FINANCIAL, LLC., FREDRIC A.
POWELL, BERKSHIRE FINANCIAL
GROUP, INC., STEVE HAVLAMA a.k.a.
"STEVE HULAMA," JACQUES
MICHAANE,  JAMES USTON, GARY
CUCUZZA,  JOSEPH TRENTACOSTA
                         Defendants.
-----------------------------------------------------X

                       ***PROPOSED***
                   ***AMENDED COMPLAINT***

                **JURY TRIAL DEMANDED**

     MARIE PETERSEN, by and through her attorneys, LEGAL SERVICES FOR

THE ELDERLY IN QUEENS, the LEGAL/SOCIAL WORK ELDER ABUSE

PREVENTION PROJECT, and LESLIE SALZMAN, as and for her complaint,

respectfully alleges as follows:

1.    This action seeks to set aside a deed dated October 12, 2005, which purported to

     transfer title and ownership of a certain parcel of real property known and

     designated as and by the street address 519 Throop Ave., Brooklyn, NY 11221

     from Plaintiff to 519 Throop Ave, LLC, a sham corporation, as null and void.

     This action also seeks to vacate the mortgages, dated October 17, 2005, between

     fictitious corporation 519 Throop Ave., LLC and Defendants Aries Financial,

     LLC and Fredric A. Powell, Esq., which allegedly encumber the property.

1

Defendants defrauded plaintiff Marie Petersen to unknowingly sign over her home to a sham corporation entitled 519 Throop Ave., LLC. Plaintiff, the supposed sole managing agent of 519 Throop Ave, LLC, had no idea of its existence until 2006, when the conduct of defendants came to light.

2. In the alternative, if this Court does not find the deed and mortgages to be void, this action seeks a declaration that the mortgages, dated October 17, 2005, between 519 Throop Ave., LLC and Defendants Aries Financial, LLC and Fredric A. Powell, Esq. to be equitable mortgages between Plaintiff Marie Petersen and Defendants Aries Financial, LLC and Fredric A. Powell, Esq., and thus subject to all relevant claims under federal and state consumer protection laws.  Plaintiff seeks relief against defendants based on violations of the Federal Truth In Lending Act, the Federal Real Estate Settlement Procedures Act, the Federal Fair Housing Act, the Federal Civil Rights Act, the New York State Deceptive Practices Act, the New York State Anti-Predatory Lending Law, and the common law doctrines of conspiracy to commit fraud, unconscionability and unjust enrichment.

3. Accordingly, Plaintiff requests that the entire transaction between Plaintiff and Defendants be set aside.

### JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

2

6.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the subject property is located in the Eastern District of New York and a substantial portion of the events giving rise to this complaint occurred within the Eastern District of New York.

## PARTIES

7.   Plaintiff Marie Petersen is a 73-year-old black woman born in South Africa. Ms. Petersen purchased the subject property in 1982 and resided there continuously for over twenty years.

8.   Defendant Aries Financial is a corporation registered with the State of Alaska, whose registered office is located at 9360 Glacier Hwy Ste 202, Juneau, AK 99801.  Upon information and belief, Aries Financial has regularly conducted mortgage transactions in New York State.

9.   Defendant Fredric A. Powell is an attorney licensed to practice law in New York State, whose office is located at 6800 Jericho Turnpike, Syosset, NY 11791.

10.  Defendant Berkshire Financial Group, Inc. is a corporation registered in New York State, whose registered office is located at 585 N. Gannon Avenue, Staten Island, NY 10314.  Upon information and belief, Defendant Berkshire Financial Group, Inc., may have ceased its mortgage brokerage business, but has not formally discontinued operations as required by New York law.   Frank Carone is the principal, and upon information and belief, the sole member, officer, and shareholder of Defendant Berkshire Financial Group, Inc., and is in all respects indistinguishable from the corporate entity.

3

11.   Defendant Steve Havlama is a current or former principal, employee, and/or agent of Berkshire Financial Group, Inc. Upon information and belief, in 2005-2006, Mr. Havlama conducted business as a mortgage broker but was not licensed to do so.  Upon further information and belief, Mr. Havlama's place of business is located at 585 N. Gannon Avenue, Staten Island, NY 10314.

12.   Defendant James Uston is a current or former principal, employee, and/or agent of Defendant Berkshire Financial Group, Inc.  Upon information and belief, in 2005-2006,  Mr. Uston conducted business as a mortgage broker but was not licensed to do so.   Upon information and belief, Defendant Uston works at a Wall Street brokerage firm.

13.   Defendant  Joseph Trentacosta is a current or former principal, employee, and/or agent of Defendant Berkshire Financial Group, Inc.  Upon information and belief, in 2005-2006, Mr. Trentacosta conducted business as a mortgage broker but was not licensed to do so.  Defendant Trentacosta lives/works at 8629 19th Avenue, Brooklyn, NY, 11214.

14.   Defendant Gary Cucuzza is a current or former principal, employee, and/or agent of Defendant Berkshire Financial Group, Inc.  Upon information and belief, in 2005-2006, Mr. Cucuzza conducted business as a mortgage broker but was not licensed to do so.   Upon information and belief, Defendant Cucuzza lives and/or works at 2654 National Drive, Brooklyn,  New York 11234 and 2806 East 27th Street, Unit 242, Brooklyn, NY, 11210.

15.   Defendant Jacques Michaane is a businessman whose principal place of business is 325 Empire Blvd., Suite 1B, Brooklyn, NY 11225. Mr. Michaane

4

holds a deed to 519 Throop Avenue and is named as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

### FACTS COMMON TO ALL CLAIMS

16.  Plaintiff Marie Petersen purchased the subject property on 519 Throop Avenue with her husband in 1982. Ms. Petersen grew up in South Africa, and she did not learn English until after she came to the United States in 1972. She had a total of four years of schooling, and has very low reading and writing abilities. Her husband took care of their financial matters until he passed away in 1999.

17.  The subject property is a 4-family building.   For over twenty years, Ms. Petersen lived in one of the apartments in the subject property and rented out the remaining apartments for additional income.  In or around 2004, Ms. Petersen went to temporarily stay in an apartment on Sterling Place to assist an elderly aunt who was no longer able to live on her own.

18.  In the Spring of  2005, Ms. Petersen she had fallen slightly behind on her mortgage payments with Homeowners Loan Corporation.   Her burner and boiler were broken and she needed money to repair them. In addition, Ms. Petersen's mother was ill with cancer, and Ms. Petersen was paying her mother's medical bills.

19.  At around this same time in 2005, Marie Petersen received a phone call from a man who identified himself as Steve.  Upon information and belief, "Steve" is Defendant Steve Havlama of Berkshire Financial Group, Inc.  In the course of his conversation with Ms. Petersen, Havlama identified himself as a real estate broker who finds people loans. Ms. Petersen told Mr. Havlama that she was two

5

months behind on her mortgage payments and needed to make repairs on her house, and asked Mr. Havlama if she was eligible for a loan. Mr. Havlama asked how much Ms. Petersen needed, and Ms. Petersen said she needed $40,000 to fix her house and catch up on her mortgage payments. Mr. Havlama said he would call some banks and try to find her a loan.

20. For the next few weeks, Mr. Havlama called Ms. Petersen several times a week to update her on his search to find her a loan. Upon information and belief, Mr. Havlama's search to find Ms. Petersen a loan was on behalf of Berkshire Financial Group, Inc. Each time, Mr. Havlama told Ms. Petersen that the banks he contacted refused to extend Ms. Petersen a $40,000 loan. Mr. Havlama said that he was having difficulty finding a bank willing to loan Ms. Petersen the money because Ms. Petersen had a low credit score. Upon information and belief, Mr. Havlama did not actually base his search on Ms. Petersen's credit score, nor did he conduct a good faith search for a loan.

21. Mr. Havlama called Ms. Petersen to inform her that he found a private lender, someone named Mr. Powell, who would lend her $40,000.

22. Mr. Havlama came over to Ms. Petersen's home to get some information. He wrote down Ms. Petersen's social security number and looked over her deed.

23. During this visit, Ms. Petersen informed Mr. Havlama that she was going into the hospital for a knee operation, so the signing of the loan documents would have to wait until after she left the hospital. Mr. Havlama told Ms. Petersen that he would bring the papers to the hospital and she could sign them there.

6

24.   On or around June 17, 2005, Ms. Petersen went into the hospital for a knee

operation. About a week after Ms. Petersen entered the hospital, Mr. Havlama

came to the hospital accompanied by a man and woman unknown to Ms.

Petersen. Ms. Petersen was very ill, as she had been suffering from epileptic fits

while in the hospital and was experiencing a difficult recovery from her knee

surgery. Mr. Havlama brought Ms. Petersen flowers and expressed concern

about her recovery, and then presented loan documents for her to sign.

25.   Mr. Havlama explained to Ms. Petersen that the loan would be structured

differently than originally discussed. Under this proposed loan, Mr. Powell

would make Ms. Petersen's mortgage payments for one year and pay off her

electricity bill. After one year, Ms. Petersen would make payments of $3,000

per month to Mr. Powell for thirty years. In addition, Ms. Petersen would

receive $11,000 in cash. Ms. Petersen refused to sign the documents.  Mr.

Havlama said he would continue to look for someone who would loan Ms.

Petersen $40,000.

26.   Mr. Havlama continued to call Ms. Petersen regarding his efforts to locate an

affordable loan.

27.   In early October, Ms. Petersen became quite ill and was hospitalized from

October 7th - 14th to address problems related to acute infection and kidney

insufficiency.

28.   On October 11th, without Ms. Petersen's knowledge or acquiescence, Defendant

Powell requested that an agent in Albany file Articles of Organization for a

sham corporation, 519 Throop Ave., LLC., and these Articles were filed in

Albany on the morning of October 12th.  The Articles of Organization do not provide the names of any members of the LLC.

29.   On October 12, Defendant Havlama came to the hospital with an attorney for Aries and a woman unknown to Ms. Petersen. Defendant Havlama told Ms. Petersen that under the loan he wanted to arrange, Powell would pay her mortgage for one year and her outstanding utility bill, and thereafter she would make monthly mortgage payments of $ 3,000 for the next 30 years.  He also told Ms. Petersen that she would only be getting $11,000 in cash, not the $40,000 she had requested. He then presented several documents for her signature. Ms. Petersen refused to sign the documents, as she did not want to sign in the hospital and also she needed more than $11,000. Although Ms. Petersen does not recall signing documents in the hospital, there are two documents dated October 12, 2005, that bear her signature–a deed transferring 519 Throop Ave. to 519 Throop Ave., LLC.,  and a 14% interest-only mortgage with Aries in the amount of $ 425,000.

30.   Upon Ms. Petersen's discharge from the hospital, Mr. Havlama again called Ms. Petersen and informed her that Mr. Powell was now able to give her $15,000, and that this was the only reasonable and affordable loan available to her.

31.   Mr. Havlama stated that he had exhausted all possibilities, and she was in imminent danger of losing her home if she did not take the loan from Defendant Powell. Upon information and belief, Ms. Petersen was not in imminent danger of losing her home, and no foreclosure had been filed by Homeowners Loan Corporation, the holder of the note.

32.  On October 17, 2005, at 8:00 p.m., three days after Ms. Petersen's discharge from the hospital, Mr. Havlama came to Ms. Petersen's aunt's apartment with loan documents.  Mr. Havlama was accompanied by Fredric A. Powell and the same woman who was with him at the hospital.

33.  Ms. Petersen told them that she would not sign the papers until her lawyer, Jacques Michaane, came to her house and examined them. Jacques Michaane is not a lawyer, but Ms. Petersen was under the belief that he was and referred to him as a lawyer to Mr. Havlama and Mr. Powell.

34.  After about thirty minutes, Mr. Havlama and the others became impatient and told Ms. Petersen that they would not wait any longer. They warned Ms. Petersen that if she did not sign now she would lose her house. They also reassured Ms. Petersen that this was a fair and affordable loan and it was the only way she could save her house. Ms. Petersen signed the papers, purporting to give a 14% interest-only mortgage to Defendant Aries Financial in the amount of  $ 437,000 and to give a second  15% interest-only mortgage to Defendant Powell in the amount of $9,000.  Upon information and belief, Aries Financial holds the note to the $437,000 mortgage.

35.  Upon information and belief, defendants were aware that Plaintiff would not be able to read or understand the mortgage and deed transfer documents. Defendants used high pressure tactics to ensure that Plaintiff signed the papers before Jacques Michaane arrived at the house so as to keep her in the dark about the abusive nature of this transaction.

9

36.  Shortly after Ms. Petersen signed the papers, Mr. Michaane arrived at her home. Mr. Havlama, Mr. Powell and the woman were still at Ms. Petersen's house. Mr. Michaane looked at the papers that Ms. Petersen had signed and became very agitated.  He yelled at Mr. Powell that this was not right and that he had robbed Ms. Petersen of her house.

37.  Ms. Petersen was not represented by an attorney in this transaction. Upon information and belief, Ms. Petersen did not receive any of the documents required by federal and state law, including the Truth in Lending Act.

38.  The next day, as a result of Mr. Michaane's concern with the terms of her loan, Ms. Petersen phoned Mr. Havlama and told him that she was cancelling the loan. Mr. Havlama replied that it was legally too late to cancel the loan because the papers had already gone through.

39.  Upon hearing it was too late to cancel the loan and that the loan was the only way to save her house, Ms. Petersen cashed the $15,000 check. That night, Mr. Havlama came to Ms. Petersen's home and demanded $3,000 as a broker's fee. While Ms. Petersen never agreed to pay Mr. Havlama $3,000, she assumed that it was standard procedure and paid him the money. She used the remaining $12,000 to buy oil and make repairs on her apartment.  This $12,000 was the only cash Ms. Petersen received from the transaction.

40.  Ms. Petersen was not informed about the existence of 519 Throop Ave, LLC and that she was the "managing member," nor was she aware that her property was transferred to this LLC.   Defendants failed to inform plaintiff that she was deeding her property to a corporation and taking out mortgages in the name of

10

that corporation.  There was no consideration for the deed transfer.   Ms.

Petersen believed that she still owned her property and that a mortgage on the

property was in her name.

41.   Over the next year, Ms. Petersen continued to worry about the deal she made

with Mr. Powell and tried to find help. About five months after the transaction,

Ms. Petersen showed her pastor, William Washington, the documents, and the

pastor suggested Ms. Petersen find a lawyer to take action against Mr. Powell.

Ms. Petersen tried to get a lawyer by responding to an advertisement she saw on

television, but could not afford to retain him.

42.   In September 2006, Ms. Petersen was talking to a friend named Margerie Fisher

about the loan, and Ms. Fisher suggested that Ms. Petersen speak to a real estate

broker named Mr. Graham. Mr. Graham came to Ms. Petersen's house and

examined the loan documents. Mr. Graham referred Ms. Petersen to the

Foreclosure Prevention Project at South Brooklyn Legal Services. The

Foreclosure Prevention Project then referred Ms. Petersen to Legal Services for

the Elderly in Queens.

43.   On October 12, 2006, Ms. Petersen met with attorneys at Legal Services for the

Elderly in Queens. It was at this time that Ms. Petersen first learned of the

existence of 519 Throop Ave., LLC,  that her home had been deeded to this

corporation and was no longer in her name.  It was also at this time that she

learned that Aries Financial held the mortgage on her home.  Until October

2006, Ms. Petersen was under the belief that the sole lender was Fredric A.

Powell.

11

44.   On or around October 16, 2006, Mr. Havlama called Ms. Petersen and told her she had to take out another $80,000 loan in order to save her house.  Upon information and belief, Ms. Petersen was scheduled to start making payments of $5,098.33 per month on November 1, 2006.

45.   At around this same time, Defendant Powell initiated a loan application to Lend Mor Mortgage brokers on Ms. Petersen's behalf, but without her knowledge and consent.

46.   On November 27, 2006, Ms. Petersen received a letter from Fredric A. Powell stating that as she was not getting a loan from Lend Mor Mortgage Bankers, that he would foreclose if her loan was not paid in full. Ms. Petersen has never heard of Lend Mor Mortgage Bankers, nor are they mentioned in any of the loan documents.

## THE FINANCIAL IMPACT OF THE TRANSACTION

47.   In early October, 2005, Ms. Petersen owed approximately $283,750 in mortgage debt with monthly payments of $ 2,176.  Ms. Petersen's mortgage with Aries Financial was for $437,000.   Ms. Petersen received a check for $15,000 from the mortgage proceeds.

48.   Unbeknownst to Ms. Petersen, Aries Financial placed $63,729.17 of the mortgage proceeds into an escrow account, which were used to make interest-only payments on Ms. Petersen's loan during the first year.  Holding part of a loan in escrow so that it could pay interest on itself and the rest of the principal

12

provides no benefit to the borrower and goes against standard business practices.

49. The interest rate on the Aries loan was 14%, well above the amount allowed under consumer protection laws, which made her monthly mortgage payments $5,098.33.   Aries received an initial first month's payment of $7,647.50, and then monthly payments of $5,098.33 for the following eleven months.

50. Unbeknownst to Ms. Petersen, she also took out a $9,000 balloon mortgage with Fredric A. Powell. The interest rate on this loan was 15%, to be paid in interest only payments of $112.50 per month over a twelve month period, at which point the balance would become due.   Ms. Petersen received no benefit from this loan and did not receive any of the $9,000 proceeds of the loan with Defendant Powell.

51. Under the challenged transactions, Ms. Petersen's Homeowner's mortgage was replaced by two mortgages that increased her mortgage debt by $ 162,644 from $283,356 to $ 446,000.  She derived little obvious benefit from the transaction. She was given a check for $15,000, $3,000 of which was paid to Steve Hulama as a second broker's fee, leaving her with a total cash benefit of $12,000 and the payment of some outstanding obligations related to her home of less than $ 25,000.   She derived a total benefit of less than $40,000 from a transaction that increased her mortgage indebtedness by approximately $163,000 and caused her monthly mortgage payments to increase by $3,034, from $2,176 to $5,210 per month, with no reduction in her principal.

13

52.   In contrast, Ms. Petersen had a number of unnecessary expenses as a result of the re-financing arranged by defendants.  First, there is the unnecessary pre-payment penalty and recording fee to Homeowner's/Countrywide in the amount of $8,941.31.  Next, while Ms. Petersen was seeking a $ 40,000 loan to help her with her outstanding debts, Defendants arranged for two loans totaling $446,000 with points and broker's fees calculated on this inflated loan amount and all of the appraisal, title and closing fees associated with two loans at this amount– unnecessary expenses totaling approximately $42,000.  Additionally, both Aries and Mr. Powell were aware that Ms. Petersen could ill afford these two new loans on her home so they insured that they would receive payments on their loans for at least one year by placing $65,079 of the loan proceeds in an escrow account thus insuring that Ms Petersen made her interest only mortgage payments on both loans for the first year of the loan.

### DEFENDANTS' CONCERTED ACTIONS

53.   When conducting business in New York, Defendant  Aries Financial worked exclusively  with a small group of mortgage brokers, or people conducting business as mortgage brokers.

54.   Upon information and belief, the transaction with Ms. Petersen was part of a scheme between Defendants Powell, Uston, Cucuzza, Trentacosta, and Havlama, acting in concert with Defendant Aries Financial by utilizing lists of distressed homeowners in minority neighborhoods to identify and locate distressed minority borrowers to whom they would extend predatory loans.

55.   Upon information and belief, it was part of defendants' scheme to place subject property into an LLC so that defendants could shield themselves from liability under various state and federal laws.

56.   Upon information and belief, it was part of the scheme of Defendants Powell, Uston, Cucuzza, Trentacosta, Havlama, and Aries Financial to lead the distressed homeowner to believe they would locate a loan with favorable terms. Upon information and belief, however, defendants did not actually conduct a good faith search for a reasonable loan and the distressed homeowner was only offered a predatory loan from Defendant Aries Financial and/or Defendant Powell.  In some instances, as part of the concerted scheme, Defendants Powell, Uston, Cucuzza, Trentacosta, Havlama, and  Aries Financial would share the proceeds of these transactions in the form of exorbitant fees and commissions.

57.  Upon information and belief, although not licensed mortgage brokers, Defendants Uston, Trentacosta, Cucuzza, and Havlama received brokerage commissions in connection with the loan between the Plaintiff and Defendant Aries Financial.  Upon information and belief, Defendants Uston, Trentacosta, and Cucuzza did not perform any identifiable work in connection with the loan between the Plaintiff and Defendant Aries Financial.

58.  In addition, upon information and belief, it appears that Defendants developed a scheme that allowed them to continuously flip properties from one to the other in order to strip equity from consumers homes and split the proceeds amongst themselves.

15

59.   According to Aries' records, defendant Aries Financial has engaged in forty three mortgage transactions in New York City, all of which involved property which was deeded from a person to an LLC that bore the name of the address of that property and listed the owner as the sole managing member.  In every instance, the LLC was created immediately prior to the Aries transaction by counsel for Aries.

60.   Upon information and belief, the defendants transferred the ownership of Ms. Petersen's property into a corporation in order to shield themselves from Federal and New York State consumer protection laws, including but not limited to the Federal Truth in Lending Act, the Real Estate Settlement Procedures Act, the Federal Fair Housing Act, the Deceptive Practices Act, and the New York State Anti-Predatory Lending Law.

61.   In most or all of these cases, the LLC took out a mortgage with Aries Financial with interest rates ranging between 14% and 16%.

62.   Of the 43 properties involved in Aries' loans in New York City, 36 of those properties were located in neighborhoods that are mostly black and Hispanic. Of those 36 properties, approximately three-fifths of the properties are located in areas with populations that are greater than 80% black and Hispanic, and the other approximately two-fifths have populations that range between 50-80% black and Hispanic.

63.   Some Aries loan files indicate that brokers were targeting minority neighborhoods and minority borrowers.

64.     Defendant Powell made at least eight loans within the five boroughs of
New York.  Of those eight loans, at least six were made to minority borrowers..
Of the neighborhoods in which these eight loans were made, 4 were made in
neighborhoods with minority populations great than 96%, and 3 were made in
neighborhoods with minority populations greater than 82%.

### FIRST CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve
Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### NEW YORK REAL PROPERTY LAW § 320

65.   Plaintiff repeats and re-alleges each and every allegation in the foregoing
paragraphs as though fully set forth herein.

66.   The deed transfer from plaintiff to 519 Throop Ave., LLC, although a
conveyance of property on its terms, must be considered a mortgage as a matter
of law.  Under New York State common law and New York Real Property Law
§ 320, "[a] deed conveying real property, which by any other instrument,
appears to be intended only as a security in the nature of a mortgage, although
an absolute conveyance in terms, must be considered as a mortgage."

67.   The deed from plaintiff to 519 Throop Ave., LLC was never meant to transfer
any type of ownership of the property. 519 Throop Ave., LLC is a single
member liability company and Ms. Petersen is the sole member of the company.
Ms. Petersen has the same ownership interest in the property whether it is
owned by her or a single member Limited Liability Company. Upon

17

information and belief, defendants orchestrated the formation of the corporation and the transfer of the deed from Ms. Petersen to that corporation so that they could give Ms. Petersen a mortgage with terms much more onerous than are permitted by Federal and New York State consumer protection laws, which would have applied if Ms. Petersen took out the mortgage as a natural person.

68.   Defendant Fredric A. Powell filed the articles of organization for 519 Throop Ave., LLC., prior to ever meeting or speaking with Ms. Petersen.

69.   Ms. Petersen was not aware of the existence of this LLC.  Ms. Petersen was under the belief that she was entering a consumer loan.

70.   Upon information and belief, 519 Throop Ave., LLC has been inactive aside from the October 12, 2005 deed transfer and October 17, 2005 mortgage transactions with Aries Financial and Fredric A. Powell.

71.   To establish that a deed conveyance was meant as a security, examination also may be made of oral testimony bearing on the intent of the parties and to a consideration of the surrounding circumstances and acts of the parties. Defendants' acts and statements evinced an intent to take out a mortgage with plaintiff, and to use a dummy LLC to shield them against consumer protection laws.  As Plaintiff's property is her sole asset, she clearly derived no protection or benefit from transferring ownership of her property to a corporation. The only effect of putting it into the name of an inoperative corporation was to deprive her of consumer protection claims and enable the mortgagees to get more money from Ms. Petersen.

72.   Plaintiff therefore requests an order finding that that the October 12, 2005 deed transfer to 519 Throop Ave., LLC and corresponding mortgages are equitable mortgages between Ms. Petersen and Aries Financial, LLC and Fredric A. Powell, entitled to all the rights and remedies afforded to consumers under state and federal law.

## SECOND CAUSE OF ACTION

### Against Aries Financial, LLC, and Fredric A. Powell

### TRUTH IN LENDING ACT

73.   Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

74.   At the time of the subject transaction, defendant Aries Financial, LLC and defendant Fredric A. Powell acted as creditors who regularly engaged in the making of mortgage loans payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.  Accordingly, defendants are subject to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and its implementing regulations, Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

75.   As a result of the subject transaction, defendants acquired an interest in plaintiff's home that secures payment or performance of an obligation.

76.   Upon information and belief, in the course of the October 12, 2005 consumer credit transaction described above, defendants violated the disclosure and

19

rescission requirements of TILA and Regulation Z in the following and other respects:

   a.  By failing to disclose properly and accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b);

   b.  By failing to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C. § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) & 226.4;

   c.  By failing to disclose properly and accurately the "annual percentage rate" in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e);

   d.  By failing to disclose properly and accurately the "total of payments" in violation of 15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.18(h);

   e.  By failing to disclose properly and accurately the number, amount, and due dates or period of payments scheduled to repay the obligation in violation of 15 U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g);

   f.  By failing to provide two copies of the notice of the right to rescind and an accurate date for the expiration of the rescission period in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b).

77.   The above violations of the Truth in Lending Act give plaintiff an extended right to rescind the loans held by defendants pursuant to 15 U.S.C. §§ 1635 & 1641(d)(1) and 12 C.F.R. § 226.23.

78.   In addition, defendants are liable to plaintiff for actual and statutory damages, costs and disbursements, and attorneys' fees.

20

### THIRD CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

REAL ESTATE SETTLEMENT PROCEDURES ACT

79.   Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

80.   The mortgage transaction between Aries Financial, LLC and 519 Throop Ave., LLC dated October 17, 2005 is a loan secured by a first lien on a four-family residential property, the proceeds of which were used to pay off plaintiffs' mortgage with Homeowners/Countrywide.

81.   Upon information and belief, defendant Aries Financial, LLC is a creditor who makes or invests in mortgage loans aggregating more than $1,000,000 per year.

82.   The mortgage transaction between Aries Financial, LLC and 519 Throop Ave., LLC dated October 17, 2005 is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1), and therefore is subject to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq.

83.   Defendant Aries Financial, LLC violated RESPA with respect to plaintiff's loan transaction by:

a.   Failing to provide a good faith estimate of settlement costs and a HUD-1 settlement statement at closing, in violation of 12 U.S.C. § 2603 and Regulation X § 3500.7.

    b.  Giving a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(c).

84.    Defendants Berkshire Financial Group, Inc. and Steve Havlama, Gary Cucuzza, Joseph Trentacosta, James Uston violated RESPA by:

    a.  Failing to provide a good faith estimate of settlement costs and a HUD-1 settlement statement at closing, in violation of 12 U.S.C. § 2603 and Regulation X § 3500.7.

    b.  Upon information and belief, accepting a portion, split or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(c).

85.    Defendants are liable to plaintiff for: actual damages, trebled under 12 U.S.C. § 2607(d)(2); costs and disbursements; and attorneys' fees.

22

## FOURTH CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### FEDERAL FAIR HOUSING ACT, 42 U.S.C. § 3605

86. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

87. Defendants Aries Financial, Fredric A. Powell, Berkshire Financial, Cucuzza, Trentacosta, Uston, and Havlama discriminated against Ms. Petersen, who is black, on the basis of her race in a residential real-estate transaction in violation of the Federal Fair Housing Act, 42 U.S.C. § 3605.

88. Ms. Petersen was eligible for a residential mortgage and Defendants Aries Financial, Fredric A. Powell Berkshire Financial, Cucuzza, Trentacosta, Uston, and Havlama extended a mortgage to her on grossly unfavorable terms.

89. Defendants Aries Financial and Fredric A. Powell, Berkshire Financial, Cucuzza, Trentacosta, Uston, Havlama targeted minority neighborhoods in New York City, particularly in Brooklyn and Queens, where they made substantial profits by deceiving minority homeowners into entering predatory mortgage transactions that stripped valuable equity from their homes and dispossessed them of all rights afforded by consumer protection laws.

90. These actions were taken deliberately and with discriminatory intent and a reckless disregard for Ms. Petersen's rights.

91. In addition, defendants Aries Financial, Fredric A. Powell, Berkshire Financial, Cucuzza, Trentacosta, Uston, Havlama engaged in a pattern of discriminatory

23

practices related to residential real estate transactions that had a disparate impact on non-white homeowners in and around New York City.

92.     As a proximate result of these discriminatory practices related to residential real estate transactions, Ms. Petersen has suffered economic loss, mental anguish, deprivation of civil rights, and the prospective loss of housing.

93.     As a result of these discriminatory practices, this Court should declare null and void the subject deed dated October 12, 2005; enjoin the defendants from claiming a lien on the property in conjunction with the subject deed dated October 12, 2005 and subsequent mortgage dated October 17, 2005; and enjoin defendants from engaging in similar discriminatory acts and practices, pursuant to 42 U.S.C. § 3613(c). In addition, defendants are liable for actual and punitive damages, as well as costs and disbursements, pursuant to 42 U.S.C. § 3613(c) and (d).

## **FIFTH CAUSE OF ACTION**

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### **DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. §§ 1981,1982, and 1985(3)**

94.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

95.     Defendants Aries Financial, LLC and Fredric A. Powell Berkshire Financial, Cucuzza, Trentacosta, Uston,Havlama acted in concert to target minority neighborhoods to seek out borrowers who would unwittingly transfer their deeds to shell corporations and then take out mortgages on unreasonable terms.

In the case of Ms. Petersen, such actions were taken deliberately and with discriminatory intent, and with reckless disregard for Ms. Petersen's civil rights.

96.   These discriminatory acts and conduct denied Ms. Petersen the same rights to make and enforce contracts , and to enjoy the full and equal benefit of the laws, as are enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.  Furthermore, such acts and conduct denied Ms. Petersen the same rights to inherit, purchase, lease, sell, hold and convey real property, as are enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1982.

97.  In addition, defendants actively communicated with each other and acted in concert and with discriminatory animus to deprive Ms. Petersen and other minority borrowers of their civil rights in violation of 42 U.S.C. § 1985(3).

98.   As a proximate result of these discriminatory actions, Ms. Petersen has suffered economic loss, mental anguish, deprivation of civil rights, and the prospective loss of housing.

99.   As a result of these violations of 42 U.S.C. §§ 1981,1982, and 1985(3) this Court should declare null and void the subject deed dated October 12, 2005; enjoin the defendants from claiming a lien on the property in conjunction with the subject deed dated October 12, 2005 and subsequent mortgage dated October 17, 2005; and enjoin defendants from engaging in similar discriminatory acts and practices.   Defendants are also liable for actual and punitive damages, as well as costs, attorney's fees, and disbursements.

## SIXTH CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### EQUITABLE ESTOPPEL

100.  Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

101.  It belies reason that Ms. Petersen, a woman who has a total of four years of schooling and can barely read or write, could form a corporation and act as the sole managing agent.  Furthermore, taking out a mortgage in the name of a corporation would provide no tangible benefit to Ms. Petersen, as it simply allows for more abusive loan terms and strips her of rights afforded by Federal and New York State consumer protection laws.

102.  Allowing the mortgage to remain in the name of this fictitious corporation would change Ms. Petersen's position in such a way that she will suffer serious injury if her equitable estoppel claim is denied. She will have no opportunity to bring claims under consumer protection laws, despite the fact that defendants patently violated her rights as a consumer.

103.  Accordingly, Defendants should be estopped from claiming that the subject mortgages were made between them and a corporation so that the mortgages are subject to state and federal consumer protection laws.

26

## SEVENTH CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### CIVIL CONSPIRACY TO COMMIT FRAUD

104.  Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

105.  Defendants knowingly entered into an agreement to deceive plaintiff into entering the October 12, 2005 deed transfer and October 17, 2005 mortgage transactions by making misrepresentations and/or failing to provide material information.

106.  Defendants intentionally participated in the scheme by deceiving plaintiff into entering into the October 12, 2005 deed transfer and October 17, 2005 mortgage transactions by making misrepresentations and/or failing to provide material information, in furtherance of the agreement.

107.  Plaintiff suffered serious injury as the proximate result of her reliance on defendants' actions and representations.

108.  Said conspiracy renders void and unenforceable the October 12, 2005 deed and October 17, 2005 mortgages.

109.  Defendants are liable to plaintiffs for actual damages, punitive damages, costs and disbursements, and attorneys' fees.

27

## EIGHTH CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### UNCONSCIONABILITY

110.  Plaintiff repeats and re-alleges each and every allegation in the foregoing

paragraphs as though fully set forth herein.

111.  Throughout the course of the October 12, 2005 equitable mortgage/deed

transaction, an enormous disparity in bargaining power existed between plaintiff

and defendants. Defendants took advantage of Ms. Petersen's fear and

desperation about losing her home, her confusion, and her lack of legal

representation to deceive her into signing a deed and mortgage papers that she

clearly did not understand. Defendants are experienced lenders, brokers, and

lawyers who have engaged in numerous transactions of this nature. By contrast,

plaintiff has little experience in the area of mortgage lending and refinancing,

and very low reading abilities. Defendants sought to profit from this disparity in

bargaining power and sophistication and did so by deliberately targeting

plaintiff with misinformation.

112.  This blatant overreaching, through which defendants exploited Ms. Petersen

through a gross disparity of bargaining power, constitutes procedural

unconscionability.

113.  The terms of the transaction are so one-sided as to be abusive and

unconscionable. Defendants exploited the disparity in bargaining power to

deceive plaintiff into entering into a highly disadvantageous transaction while

28

under the belief that this was an affordable mortgage which would enable her to save her house. Upon information and belief, defendants knew that Ms. Petersen could not receive a substantial benefit and that there was no reasonable probability Ms. Petersen would be able to repay the loan. Said procedural and substantive unconscionability renders void and unenforceable the October 12, 2005 deed transfer/equitable mortgage and the October 17, 2005 mortgages.

114. Defendants were unjustly enriched by these transactions, as they stripped Ms. Petersen of her equity of at least $100,000-$150,000.

115. Accordingly, a judgment should be entered declaring the deed dated October 12, 2005 and the mortgages dated October 17, 2005 to be null and void, and awarding plaintiff actual and punitive damages, as well as costs and disbursements.

## <u>NINTH CAUSE OF ACTION</u>

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

### NEW YORK STATE GENERAL BUSINESS LAW § 349 ("THE DECEPTIVE PRACTICES ACT")

116. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

117. Upon information and belief, defendants conducted a business and furnished a service as those terms are defined in New York State General Business Law § 349 (the "Deceptive Practices Act").

118. Defendants violated the Deceptive Practices Act in that their acts were misleading in a material way, unfair, deceptive, and contrary to public policy

29

and generally recognized standards of business. Such acts include, but are not
limited to:

a. Deceiving plaintiff into entering into a mortgage that provided her no
   tangible benefit and stripped valuable equity from her home by taking
   advantage of her limited mental capacity, her lack of education and
   financial sophistication, her fear and desperation about losing her home,
   and her isolation from professional advice or guidance from a friend or
   relative, thus exploiting a gross disparity in bargaining power;

b. Convincing plaintiff to go through with the mortgage transaction by
   making her believe that she was in imminent danger of losing her home
   and claiming that she was not eligible to obtain a loan from any other
   lender;

c. Taking gross advantage of plaintiff by giving her a $437,000 mortgage, in
   exchange for paying off approximately $283,750 in outstanding mortgage
   debts and providing her with benefits totaling less than $ 40,000, and thus
   profiting around $100,000 dollars;

d. Misrepresenting to plaintiff the nature of the documents she was signing
   and the nature and details of the transaction;

e. Tricking plaintiff into signing documents that transferred her property to a
   sham corporation so that defendants could shield themselves against
   consumer protection laws; and

f. Misrepresenting to plaintiff at the time of the subject transaction that she,
   and not a sham corporation, was taking out the loan;

30

119. In the course of extending an equitable mortgage to plaintiff, defendants
violated the Deceptive Practices Act by:

    a.  Failing to provide plaintiff with a "good faith estimate" of settlement costs
three days after application for the loan, as is required by federal law;

    b.  Hiding the cost of credit of the mortgage by failing to deliver the federally
required disclosures to plaintiff;

    c.  Failing to provide plaintiff with an itemization of the amount financed,  as
is required by federal law; and

    d.  Misrepresenting numerous other critical and material aspects of the
financing transactions, as described above.

120. Upon information and belief, Aries Financial and Fredric A. Powell have
perpetrated similar schemes against many other homeowners in addition to Ms.
Petersen, primarily in non-white neighborhoods.

121. Defendants' practices were directed at consumers and have had and may
continue to have a broad impact on consumers throughout New York State.

122. Plaintiff Ms. Petersen suffered serious injury as a proximate result of the
deceptive practices engaged in by defendants.

123. As a result of the aforesaid deceptive practices, this Court should declare null
and void the fraudulent deed dated October 12, 2005 purporting to transfer
plaintiff's interest in the property to 519 Throop Ave, LLC and declare as void
the mortgage claimed by Aries Financial and Fredric A. Powell against the
property.

124.  Defendants are liable to plaintiffs for actual damages, costs and disbursements, and attorneys' fees.

## NINTH CAUSE OF ACTION

**Against Aries Financial, Fredric A. Powell, Berkshire Financial Group, Inc., Steve Havlama, Gary Cucuzza, Joseph Trentacosta, and James Uston**

NEW YORK STATE ANTI-PREDATORY LENDING LAW

125.  Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

126.  The mortgage with Fred Powell is a "high cost loan" as defined in New York State's anti-predatory lending law. The yield on treasury securities during the period in which Ms. Petersen took out the subject mortgage fluctuated between 4.3% and 4.7%. The annual percentage rate of 15% on Ms. Petersen's loan exceeds 9% of the yield on treasury securities having comparable maturities.

127.  In the course of extending an equitable mortgage to Plaintiff, Defendants violated New York State's Anti-Predatory Lending Law by:

   a.  Making a second loan without regard to Ms. Petersen's ability to repay the loan.

   b.  Deceiving Ms. Petersen into entering into a refinance that failed to provide her with a tangible net benefit.

   c.  Upon information and belief,  Defendant Powell provided defendants Berkshire Financial Group, Inc. and Steve Havlama with a kickback for arranging the subject transaction;      and

32

    d.   Failing to provide a written notice and list of approved counseling services prior to the loan closing.

128.   Accordingly, a judgment should be entered declaring the mortgages dated October 17, 2005 to be null and void, and awarding plaintiff actual damages pursuant to New York State Banking Law § 598(3) and § 598(5) as applicable to each defendant, attorneys' fees as well as costs and disbursements.

### IN THE ALTERNATIVE, AND FOR A TENTH CAUSE OF ACTION

**Against Aries Financial, LLC, Fredric A. Powell, and Jacques Michaane**

**N.Y. REAL PROPERTY ACTIONS AND PROCEEDINGS LAW, ARTICLE 15**

129.   Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

130.   Plaintiff brings this claim pursuant to Article 15 of the New York State Real Property Actions and Proceedings Law to compel the determination of any claims adverse to those of plaintiff in the premises known as 519 Throop Ave, Brooklyn, NY 11221. Through this action, plaintiff seeks quiet title to the subject property by having declared as void the fraudulent deed transfer dated October 12, 2005 from plaintiff to 519 Throop Ave., LLC, and the mortgages dated October 17, 2005  held by Aries Financial and Fredric A. Powell.

131.   Defendants through trick and artifice made plaintiff believe that she was entering a consumer loan. The fraud perpetrated by Defendants is fraud that rises to the level of forgery and transfers no interest. As a void transfer, 519

Throop Ave., LLC had no valid interest in the property to give to Aries

Financial or Fredric A. Powell. Hence the mortgages are void.

132. Upon information and belief, no party who is or should be a defendant is or

might be an infant, mentally retarded, mentally ill or an alcohol abuser.

133. Upon information and belief, the judgment to be entered in this action will not

affect a person or persons not in being or ascertained at the commencement of

this action, who by any contingency contained in a devise or grant or otherwise,

could afterward become entitled to a beneficial estate or interest in the property.

134. Accordingly, plaintiff is entitled to a judgment pursuant to R.P.A.P.L. § 1515

declaring that she is the owner in fee simple of the subject premises and

declaring that the deed dated October 12, 2005 and the mortgages dated October

17, 2005 are void and have no effect.

<u>**AS AND FOR AN ELEVENTH CAUSE OF ACTION**</u>

**Against Defendants Havlama, Uston, Trentacosta, and Cucuzza**

**UNJUST ENRICHMENT**

135. Plaintiff repeats and re-alleges each and every allegation in the foregoing

paragraphs as though fully set forth herein.

136. As a result of defendants' material misrepresentations and omissions regarding

the terms of the subject mortgage, including the costs and fees of the

transactions,  plaintiff was induced to re-finance into an unaffordable mortgage

that  stripped valuable equity from her home.

137. As a result of defendants' false representations and omissions, defendants have

been unjustly enriched to the direct detriment of the plaintiff.

34

138.  As a result thereof, plaintiff is entitled to damages at an amount to be

determined at trial.

WHEREFORE, Plaintiff Marie Petersen respectfully requests that this Court issue a

judgment:

1.  Setting aside the deed dated October 12, 2005 and the mortgages dated October

17, 2005 as void and with no legal effect; or, in the alternative

2.  Declaring that the October 12, 2005 deed transfer and October 17, 2005

mortgages be deemed equitable mortgages subject to all New York State and

Federal consumer protection claims pursuant to New York Real Property Law §

320 and to the common law doctrine of equitable estoppel;

3.  Rescinding the October 12, 2005 equitable mortgage transaction; voiding the deed

that transferred title from plaintiff to 519 Throop Ave, LLC and terminating any

security interest in plaintiff's property created by the transaction;

4.  Awarding statutory damages pursuant to TILA and Deceptive Practices Act;

5.  Awarding actual damages in an amount to be determined at trial but no less than

$1,000,000 pursuant to the Deceptive Practices Act, TILA, RESPA, the New

York State Anti-Predatory Lending Law, 42 U.S.C. § 3605, 42 U.S.C. §§ 1981

and 1982,  1985(3), and the common law doctrines of fraud, conspiracy to commit

fraud, unconscionability, and unjust enrichment;

6.  Awarding punitive damages in an amount to be determined at trial pursuant to 42

U.S.C. § 3605, 42 U.S.C. §§ 1981 and 1982, 1985(3), and the common law

doctrines of fraud, conspiracy to commit fraud, and unconscionability;

35

7.  Awarding costs and fees of this action pursuant to the Deceptive Practices Act, TILA, RESPA, the New York State Anti-Predatory Lending Law, 42 U.S.C. § 3605, 42 U.S.C. §§ 1981 and 1982, 1985(3), and the common law doctrines of fraud, conspiracy to commit fraud, and unconscionability;

8.  Awarding attorneys' fees pursuant to the Deceptive Practices Act, TILA, RESPA, the New York State Anti-Predatory Lending Law, 42 U.S.C. § 1988,  and the common law doctrines of fraud and conspiracy to commit fraud;

9.  Enjoining defendants from engaging in similar deceptive and discriminatory acts and practices in the future to prevent violations of  the Deceptive Practices Act, 42 U.S.C. § 3605 and 42 U.S.C. §§ 1981, 1982, and 1985(3).

10. Awarding such other and further relief as this Court deems just and proper.


DATED:  February 27, 2009
       Queens, New York

           /s/

DONNA DOUGHERTY
Legal Services for the Elderly in Queens
97-77 Queens Boulevard, Suite 600
Rego Park, NY 11374
(718) 286-1500, ext. 1515
(718) 275-5352 Facsimile
ddougherty@jasa.org
Attorney for the Plaintiff


Leslie Salzman
Cardozo Bet Tzedek Legal Services
55 Fifth Ave.
New York, N.Y.  10003
(p) 212-790-0240
(f) 212-790-0256
salzman@yu.edu
Attorney for Plaintiff