# FRANK A. RACANO, P.C.
**Attorney at Law**

*Office:* 198-13 Hollis Avenue
St. Albans, New York 11412-1229

*Mail:* P.O. Box 140131
Howard Beach, New York 11414

Telephone: (718) 644-9093

Facsimile: (718) 709-8641

---

**Frank A. Racano, Esq.**

February 14, 2012

*Via ECF*
Honorable Steven M. Gold
Chief Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza West
Brooklyn, New York 11201

Re:   Petersen v. Aries Financial et al.
      Civil Action No. 06-6663

Dear Honorable Magistrate Gold:

This correspondence shall serve as my status report as request by your Honor.

Purchaser has agreed, in writing, to all changes requested by the Defendants in this action and the sale of the premises is now progressing. A copy of his correspondence and the amended contracts are attached hereto for your perusal. Upon the consent of the Defendants' counsel, the contracts will be released and the matter shall continue. Closing to take place on or before April 1, 2012 time being of the essence.

Purchaser's attorney sees no reason for any delay and the matter should proceed to closing. Since my trial was completed this afternoon, I will discuss the finalization of the settlement agreement with defendant's counsel and will advise of the status of same in my next status report due February 28, 2012.

Please note that I will be unavailable from February 16, 2012 through February 22, 2012.

Should you have any questions, kindly contact my office.

Very truly yours,

FRANK A. RACANO

FAR:mq
Enclosure

# PAUL & KUNKEL
## ATTORNEYS AT LAW

35-07 90TH STREET<br>
LOWER LEVEL LEFT<br>
JACKSON HEIGHTS, NY 11372<br>
TEL: (718) 898-0304<br>
FAX: (718) 898-0093<br>
WWW.CRIMINALDEFENSELAWNYC.COM

FEBRUARY 13, 2012

FRANK RACANO, ESQ.
P.O. BOX 140131
HOWARD BEACH, NEW YORK 11414
VIA: E-MAIL: FAR3006@AOL.COM

RE: **519 THROOP AVE LLC TO HARVEY**

DEAR MR. RACANO:

I HAVE REVIEWED ALL OF THE CHANGES TO THE CONTRACT OF SALE WITH MY CLIENT AND HIS MORTGAGE BROKER. WE APPROVE AND AGREE TO ALL OF THE CHANGES, INCLUDING, BUT NOT LIMITED TO THE REMOVAL OF THE MORTGAGE CONTINGENCY CLAUSE AND THE TIME OF THE ESSENCE DATE OF APRIL 1, 2012.

KINDLY FORWARD ME THE CONTRACTS BACK AT YOUR EARLIEST CONVENIENCE.

VERY TRULY YOURS,

MICHAEL PAUL

MP:GFG
CC:   ANDREW HARVEY
      JOSEPH SPINELLI


Residential Contract of Sale 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").
CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

*Contract of Sale* made as of FEBRUARY ~~JANUARY~~ 2012    **BETWEEN**

519 Throop Avenue LLC

Address: 519 Throop Avenue, Brooklyn, New York
Social Security Number/Fed. I.D. No.(s):

hereinafter called "Seller" and

Andrew Harvey

Address: 1473 EAST 86th ST., Brooklyn, New York
Social Security Number/Fed. I.D. No.(s):

hereinafter called "Purchaser"

## *The parties hereby agree as follows:*

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 519 Throop Avenue, Brooklyn
Sheet:   Section:   Block: 1831  Lot: 3
Plate:   Volume:   Page:   District:
Tax Map Designation:

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, ~~chandeliers,~~ bathroom and kitchen cabinets and counters, ~~mantels, door mirrors,~~ switch plates and door hardware, ~~venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven,~~ built-in microwave oven, ~~refrigerator, freezer, air conditioning equipment and installations, wall-to-wall carpeting and~~ built-ins not excluded below *(strike out inapplicable items)*.

Excluded from this sale are furniture and household furnishings and

**3. Purchase Price.** The purchase price is   $   payable
as follows:              $572,400.00
(a) On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):

$ 10,000.00

~~(b) By allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:~~    $

~~(c) By a purchase money note and mortgage from Purchaser to Seller:~~    $

(d) Balance at Closing in accordance with paragraph 7:

*$530,000.00*

~~**4. Existing Mortgage.** *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of       percent per annum, in monthly installments of $       which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on      .~~

~~(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the~~

\* The Purchase price includes a Seller's Concession of up to six percent of the purchase price or $32,400.00, which shall be used to defray the Purchaser's closing costs. At the closing of title, purchaser shall credit the Seller amount of $591.30, representing the NYC & NYS transfer taxes on the seller's concession.



~~payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~
- ~~(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~
- ~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~
- ~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

**5. ~~Purchase Money Mortgage.~~** *(Delete if inapplicable)* ~~If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~
- ~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $_____ for its preparation.~~
- ~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than _____ percent per annum and the total debt service thereunder shall not be greater than $_____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess is to be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**6. Downpayment in Escrow.**
(a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at: **Chase**

Address: **New Hyde Park, New York**

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n)
**IOLA**
interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.
(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.
(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.
(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.
(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.
(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:
(a) Cash, but not over $1,000.00

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. ~~Mortgage Commitment Contingency.~~ (~~Delete paragraph if~~ inapplicable. For explanation, see **NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE.**)

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before **45** days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ * for a term of at least **30** years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (Delete this subparagraph if inapplicable) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good ~~faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender~~(s).

*$626,000.00

(d) ~~If all Institutional Lenders to whom applications were made deny~~ such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third ~~business day following the date of ordinary or regular mailing, postage prepaid~~.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.**
(a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
(b) *(Delete if inapplicable)* All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**11. Seller's Representations.**
(a) Seller represents and warrants to Purchaser that:
 (i) The Premises abut or have a right of access to a public road;
 (ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
 (iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");
 (iv) The Premises are not affected by any exemptions or abatements of taxes; and
 (v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as **Any New York Title Insurance Company** shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.**
(a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **Bargain & Sale w/ Covenants** deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of **Seller's attorney** at 10:00 a.m. o'clock on on or ~~about~~ *before* **4** / 1 / 1 2 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of

**TIME BEING OF THE ESSENCE**

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a ~~two~~ *four* family dwelling at the date of Closing.
(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.
(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.**
   (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
   (i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
   (b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
   (c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
   (d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
   (e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business days after Closing, provided that official bills therefore computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.**
   (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
   (b) (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.
   (c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.**
   (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be

impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either
(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or
(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any Notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or
(c) with respect to paragraph 7(b) or paragraph 20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than **21st Century Real Estate** ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.**
(a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.
(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.
(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.
(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provisions hereof.
(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.
(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.
(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.
(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.
(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *(Delete if inapplicable)*

# *In Witness Whereof,* this contract has been duly executed by the parties hereto.

| | |
|---|---|
| **519 Throop Avenue, LLC**<br>*Seller* | **Andrew Harvey**<br>*Purchaser* |

Attorney for Seller: Frank A. Racano, Esq. of Frank A. Racano, PC

Address: 198-13 Hollis Avenue, P.O. Box 140131, Howard Beach, NY 11414

Tel.: (718) ~~740-7050~~   Fax: (718) ~~740-7051~~
       644-4093                  709-8641

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

Attorney for Purchaser: of Michael Paul, Esq.

Address: 35-07 990th Street - LL Left
         Jackson Heights, NY 11372

Tel.: Fax: (718) 793-7285
           (718) 898-00934

Frank A. Racano, Esq.
*Escrowee*

## *Contract of Sale*

519 Throop Avenue, LLC
TO
Andrew Harvey



*First American Title Insurance Company
of New York*
Hudson Valley Region
*188 East Post Road*
*White Plains, New York, 10601*
*Phone (914) 428-3433*
*Fax (914) 428-0159*

### PREMISES

| | |
|---|---|
| Sheet | |
| Section | |
| Block | 1831 |
| Lot | 3 |
| Plate | |
| Volume | |
| Page | |
| District | |
| Tax Map Des. | |
| County | |

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
### RESIDENTIAL CONTRACT OF SALE

1. **WARNING:** The mortgage Commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sales of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.
2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage Commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of Closing in the contract and request that the expiration date of the Commitment occur after the scheduled date of Closing. Purchaser must comply with deadlines and pursue the application in good faith. The Commitment contingency is satisfied by issuance of a Commitment in the amount specified on or before the Commitment Date, unless the Commitment is conditioned on approval of an appraisal. If the Commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the Commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.
3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.
4. This clause assumes that initial review and approval of Purchaser's credit will occur before the Commitment letter is issued. Purchaser should confirm with the lender that this is the case
5. If, as has been common, the Commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a Commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those Commitment conditions, including forfeiture of the Downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting Purchaser may not recover any part of the Downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.
6. Purchaser may submit an application to a registered Mortgage Broker instead of applying directly to an Institutional Lender.
7. This clause allows Seller to cancel if a Commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the Commitment, to allow Seller the option to avoid having to wait until the scheduled date of Closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the Downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.
8. Purchaser may want to add to paragraph 21(c) that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale (alternative: If Seller is unable to transfer title under the contract of sale).

9-25-00
Joint Committee on the Mortgage Contingency Clause:
Real Property Section of the New York State Bar Association

# RIDER TO CONTRACT OF SALE DATED ~~December~~ February ___, 2011

**BETWEEN: 519 Throop Avenue LLC. as SELLER to Andrew Harvey, as PURCHASER**

**PREMISES: 519 Throop Avenue, Brooklyn, New York**

1. Supplementing Paragraph 9 of the Printed Contract:

   The sale and transfer of ownership of the premises to Purchaser shall, even though not stated in the Deed, be subject to:

   a. Ordinances, rules, regulations, requirements and approvals of applicable governmental authorities, including, but not limited to, building and/or zoning restrictions and regulations.

   b. Any state of facts which an accurate survey of the premises on the date of closing may show, provided title is not rendered unmarketable.

   c. Easements, restrictions and rights of way for screening, planting and utilities, sewer and drainage which have been granted or may hereafter be granted, provided same are not violated by present structures.

   d. Declarations, covenants, restrictions, reservations, exceptions, encroachments of less then one (1) foot, easements and agreements which have been recorded, or appear in recorded documents.

   e. Unpaid taxes and liens, provided the title company shall insure against collection of same from the premises.

2. Supplementing Paragraph 10 of the Printed Contract:

   ~~Notwithstanding the foregoing, the Seller shall have a reasonable time to comply with all notices or notes of violation of law or municipal ordinances, or requirements noted or issued by the Department of Housing and Buildings, Fire, Labor, Health or other State or Municipal Departments having jurisdiction. If the cost of removal of any notes or notices of violations of law, as mentioned in this paragraph, shall exceed the sum of Twenty Five Hundred and 00/100 ($2,500.00) Dollars, then the Seller may elect to cancel this Contract. In the event of such cancellation, this Contract shall be deemed null and void and all monies paid hereunder shall be returned to the Purchaser and the parties hereto shall be mutually released.~~

3.    Supplementing Paragraph 16(b) of the Printed Contract:

~~Notwithstanding the~~ foregoing, if costs of obtaining the above ~~exceeds~~ the amount of Twenty Five Hundred ~~and 00/100 ($2,500.00) Dollars~~, Seller shall have the option to cancel this Contract, ~~and upon~~ returning the down payment paid hereunder, neither party ~~shall have~~ any further rights against the other relative to their respective obligations herein.

4.    Supplementing Paragraph 16(d) of the Printed Contract:

Notwithstanding, Seller shall have the right to stay in possession of the fourth floor apartment for a period of seven (7) days subsequent to the closing, provided Seller deposits Twenty Five Hundred and 00/100 ($2,500.00) Dollars in escrow with Seller's attorney to assure delivery of possession; and if possession is not so delivered, the Seller shall pay One Hundred fifty and 00/100 ($150.00) Dollars per day thereafter, as liquidated damages, for the use and occupancy of the premises and may be evicted as a vendor in possession without consent. The rest of the premises shall be delivered ~~vacant and broom clean at closing~~. *as presently occupied*.

5.    Supplementing Paragraph 16(e) of the Printed Contract:

Seller does not warrant or make any representations as to the premises as same are sold in its "AS IS" condition. Purchaser has inspected the premises and is accepting the premises in its "AS IS" condition.

6.    Supplementing Paragraph 23 of the Printed Contract:

<u>Defaults and Remedies:</u>

Should Purchaser fail to perform, violate, or repudiate any of the terms of this Agreement or otherwise wilfully default hereunder, which default remains uncured for fifteen (15) days after written notice of such default by Seller, Seller may, at its option, retain all or any part of the monies paid on account hereunder as liquidated damages and not as a penalty, in which event the parties shall be discharged from all further liabilities hereunder; or Seller may otherwise avail itself of any legal or equitable rights which it may have under this Agreement or at law. If default results in a delay of the closing of title, Purchaser will only be permitted to cure the default and close within such fifteen (15) day period on condition that all adjustments shall have been made as of the date of which the closing of title should have taken place and, in addition, Purchaser shall reimburse Seller for all mortgage and interest charges incurred by Seller in consequence of such delay.

7.  Supplementing Paragraph 25(b) of the Printed Contract:

Any notice, demand or request which, under the provisions of this Agreement, may be or is required to be given, shall be mailed by registered or certified mail, return receipt requested, to the **Seller's attorney: Frank A. Racano, Esq., 198-13 Hollis Avenue, P.O. Box 140131, Howard Beach, New York 11414; and to the Purchaser's attorney: Michael Paul, Esq. 35-07 90th Street, LL Left, Jackson Heights, NY 11372.**
Any notice, demand or request so mailed shall be deemed to have been given or mailed for purposes of this Contract, except in cases where receipt of notice is specified.


8.  Supplementing Paragraph 28(e)

And the preparation of this Contract by Seller's attorney is not to be considered as an offer by Seller. The Seller shall be bound only when he accepts Purchaser's offer by affixing his signature to this Contract and Rider and returning same to Purchaser or Purchaser's attorney.

9.  Acceptance of Deed -- Full Compliance by Seller. Notwithstanding anything to the contrary herein contained, it is specifically understood and agreed by the parties hereto that the acceptance of the delivery of the Deed at the time of the closing of title hereunder shall constitute full compliance by the Seller with the terms of this Agreement, and none of the terms herein, unless expressly provided, shall survive the closing of title and the delivery and acceptance of the Deed.

10. Waiver of Jury Trial. The parties hereto do hereby agree that trial by jury in any action, proceeding or counterclaim, arising out of or from this Agreement, is hereby waived.

11. Purchaser agrees to deliver to Seller all documents and to perform all acts required by the Seller to carry out provisions of all applicable law and regulations, including Deed restrictions (if and, and this provision shall survive delivery of the Deed.

12. Purchasers -- Agents For Each Other. If two or more persons are named as the Purchaser herein, any one of them is hereby made agent for the other in all matters of any and every kind or nature affecting the premises herein or this Agreement.

3

13.     If the structures which are the subject of this contract were erected prior to 1978, there is possibility that lead-based paint was used at that time.  If Purchaser has not already waived his right to inspect, he has ten (10) days from the time Seller's agent gave him both the EPA pamphlet, "Protect Your Family from Lead in Your Home" and written notice that he has said ten (10) day period to make a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards (in most cases lead-based paint that is in good condition is not a hazard).  If Purchaser elects to make said inspection it shall be at the Purchaser's sole cost and expense.  Within five (5) days from the aforementioned notice date, the Purchaser will deliver to the Seller's attorney a written report by a certified and licensed inspector verifying that a lead-based paint hazard exists in the premises; listing the specific existing hazards and corrections needed.  Within ten (10) days after receipt of the report the Seller shall send notice to the Purchaser's attorney that he shall elect to correct the condition(s) prior to closing, or the Seller's decision to refuse to do so.  If Seller refuses to correct the condition, the Purchaser shall have the right to cancel this contract (and receive the return of his down payment) by written notice to Seller's attorney sent within ten (10) days after receipt of Seller's intent not to correct the lead-based paint hazard.  Failure to send such notice shall act as a waiver of the Purchaser's right to cancel this contract.

14. The Purchase price includes a Seller's Concession of up to six percent of the purchase price or $32,400.00, which shall be used to defray the Purchaser's closing costs. At the closing of title, purchaser shall credit the Seller amount of $591.30, representing the NYC & NYS transfer taxes on the seller's concession.

_____
519 Throop Avenue LLC. as SELLER

_____
ANDREW HARVEY,     PURCHASER

4

## EXHIBIT A

Situated in Brooklyn, Kings County, State of NY and being described as follows:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and d23escribed as follows:

Beginning at a point in the easterly side of Throop Avenue distant 40 feet northerly from the corner formed by the intersection of the Northerly side of Jefferson Avenue and the easterly side of Throop Avenue; running thence easterly parallel with Jefferson Avenue and part of the distance through a party wall 90 feet; thence northerly parallel with Throop Avenue 20 feet; thence westerly and again parallel with Jefferson Avenue and part of the distance through a party wall 90 feet to the easterly side of Throop Avenue; thence southerly along the easterly side of Throop Avenue 20 feet to the Point or Place of Beginning.

Said premises being known as and by Street number 519 Throop Avenue, Brooklyn, New York.

Premises are improved or to be improved by a one or two family dwelling only.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #Block: 1831, Lot: 3

BEING the same property conveyed to Marie Petersen, by deed from James H. Shaw, Jr. and Helen Shaw, his wife, dated 04-30-82, recorded 05-05-82, in Book 1312, page 1411, in the Clerk's Office of Kings County, NY.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

519 Throop Avenue, Brooklyn, NY 11221